**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Juno Turner
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MONET ELIASTAM, ALEXANDER
VAINER, AND RHEANNA BEHUNIAK, on
behalf of themselves and all others similarly
situated,

               Plaintiffs,

               v.

NBCUNIVERSAL MEDIA, LLC,

               Defendant.

**Civil Action No.: 1:13-cv-04634-RMB
(RLE)**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

I.      FACTUAL AND PROCEDURAL BACKGROUND...................................................... 1

        A.      Factual Allegations ......................................................................... 1

        B.      Overview of Investigation and Litigation ................................................. 2

        C.      Settlement Negotiations ........................................................................... 3

II.     SUMMARY OF THE SETTLEMENT TERMS ......................................................... 3

        A.      The Settlement Amount ........................................................................... 3

        B.      Eligible Unpaid Interns ........................................................................... 4

        C.      Releases................................................................................................... 4

        D.      Allocation Formula ................................................................................. 5

        E.      Attorneys' Fees and Litigation Costs...................................................... 5

        F.      Service Awards ....................................................................................... 5

        G.      Settlement Claims Administrator............................................................. 6

III.    CLASS ACTION SETTLEMENT PROCEDURE ......................................................... 6

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................. 8

        A.      The Settlement Is Fair, Reasonable, and Adequate. ................................ 9

                1.      Litigation Through Trial Would Be Complex, Costly, and Long
                        (*Grinnell* Factor 1). ................................................................... 10

                2.      The Reaction of the Class Has Been Positive  (*Grinnell* Factor 2). ......... 11

                3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the
                        Case Responsibly (*Grinnell* Factor 3)...................................................... 11

                4.      Plaintiffs Would Face Real Risks If the Case Proceeded
                        (*Grinnell* Factors 4 and 5)......................................................................... 12

5.    Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6). .................................................................... 13

6.    Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7). ........................................... 14

7.    The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)......................................................... 14

V.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE.............................................................................. 24

A.    Numerosity........................................................................... 17

B.    Commonality......................................................................... 17

C.    Typicality ............................................................................. 18

D.    Adequacy of the Named Plaintiffs........................................ 19

E.    Certification Is Proper Under Rule 23(b)(3)......................... 20

1.    Common Questions Predominate ............................... 21

2.    A Class Action Is a Superior Mechanism .................. 21

VI.   CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE IS APPROPRIATE.............................................................................. 24

VII.  PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......... 24

VIII. THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE.............................................................................. 24

CONCLUSION................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)..................................................................................20, 22

*In re Austrian & German Bank Holocaust Litig.,*
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)..........................................................10, 12

*Beckman v. KeyBank, N.A.,*
   293 F.R.D. (S.D.N.Y. 2013) .............................................................................20

*Cagan v. Anchor Sav. Bank FSB,*
   No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)..............................15

*Capsolas v. Pasta Res. Inc.,*
   No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012)............................19

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974)..........................................................................9, 15

*Clem v. Keybank, N.A.,*
   No. 13 Civ. 789, 2014 WL 1265909 (Mar. 27, 2014) .......................................8, 21

*Clem v. Keybank, N.A.,*
   No. 13 Civ. 789, 2014 WL 2895918 (S.D.N.Y. June 20, 2014)............................9, 12, 14, 19

*Cnty. of Suffolk v. Long Island Lighting Co.,*
   710 F. Supp. 1422 (E.D.N.Y. 1989), 907 F.2d 1295 (2d Cir. 1990) .....................16

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995)................................................................................17

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
   502 F.3d 91 (2d Cir. 2007)...........................................................................20, 21

*Dorn v. Eddington Sec., Inc.,*
   No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)...........................16

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001)................................................................................10

*Dziennik v. Sealift, Inc.,*
   No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)...........................19

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)................................................................*passim*

*Fraticelli v. MSG Holdings, L.P.*,
  No. 13 Civ. 6518, 2014 WL 1807105 (S.D.N.Y. May 7, 2014).............................14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)....................................................................................16

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)..............................................................................................17

*Glatt v. Fox Searchlight Pictures, Inc.*,
  293 F.R.D. 516 (S.D.N.Y. 2013) ..........................................................................*passim*

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000)......................................................................................9

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)..................................................................................22

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969)........................................................................12

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
  109 F.R.D. 391 (S.D.N.Y. 1986) ..........................................................................18

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)..........................22

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ..............................................................................9

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)..................................................................................18

*Marlo v. United Parcel Serv., Inc.*,
  639 F.3d 942 (9th Cir. 2011) ................................................................................13

*Marriott v. Cnty. of Montgomery*,
  227 F.R.D. 159 (N.D.N.Y. 2005)..........................................................................21

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1998)....................................................................................8

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ..........................................................................21

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ...................................................................25

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ..........................................................19

*Myers v Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ...............................................................13, 23

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) .................................................................21

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .......................................................................15

*Perez v. Allstate Ins. Co.*,
   No. 11 Civ. 1812, 2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014)..................20

*Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983)........................................................................17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ..................................................................17

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).........................................................................18

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986).........................................................................20

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ..................9

*Toure v. Cent. Parking Sys. of N.Y.*,
   No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)..................19

*In re Traffic Exec. Ass'n*,
   627 F.2d 631, 634 (2d Cir. 1980)...................................................................8

*Trinidad v. Breakaway Courier Sys., Inc.*,
   No. 05 Civ. 4116, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007).....................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).........................................................................8, 9

*Wang v. Hearst Corp.*,
   293 F.R.D. 489 (S.D.N.Y. 2013) .....................................................11, 13, 23

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)............................................................................8, 11

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2010 WL 5509089 (E.D.N.Y. Nov. 29, 2010)............................................25

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013)......................................8, 21

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ..............................................12

## Other Authorities

Fed. R. Civ. P. 23(e) ........................................................................... *passim*

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 11.22 (4th ed.
    2002) ............................................................................................ *passim*

## INTRODUCTION

Subject to Court approval, Plaintiffs Monet Eliastam, Alexander Vainer, and Rheanna Behuniak ("Plaintiffs") and Defendant NBCUniversal Media, LLC ("Defendant" or "NBCUniversal") (together with Plaintiffs, the "Parties") have settled this wage-and-hour class and collective action for a maximum amount of $6,400,000.  The proposed settlement satisfies all of the criteria for preliminary approval.  Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached to the Declaration of Justin M. Swartz ("Swartz Decl.") as Exhibit A; (2) certify the proposed class and collective for settlement purposes; (3) appoint Outten & Golden LLP ("O&G") ("Plaintiffs' Counsel") as Class Counsel; and (4) approve the proposed Notice Regarding Pendency of Class Action ("Proposed Notice"), Swartz Decl. Ex. B.  Defendant does not oppose this motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Plaintiffs and the members of the class ("Class Members" or "the Class") participated in internships at NBCUniversal Media, LLC, its precedessor, NBC Universal, Inc. and/or its Affiliated Entities, and received no compensation or compensation at a rate less than the applicable hourly minimum wage.[1]  Plaintiffs allege that Defendant violated the Fair Labor Standards Act ("FLSA") and various state wage and hour laws by improperly classifying them as non-employee "interns" exempt from federal and state minimum wage and spread-of-hours requirements and failing to pay them and other Interns minimum wage and spread-of-hours pay. Swartz Decl. ¶¶ 17-18.

---

[1]     Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

### B.      Overview of Investigation and Litigation

Before the initiation of this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  *Id.* ¶ 13.  Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.  *Id.*  Plaintiffs' Counsel conducted in-depth interviews with the Plaintiffs Jesse Moore and Monet Eliastam and numerous other former Interns to determine the nature of their duties and responsibilities, the hours that they worked, and other information relevant to their claims.  *Id.* ¶ 14.  Plaintiffs also obtained and reviewed numerous documents from Plaintiffs related to their internships with Defendant, including onboarding paperwork, intern guides, emails, memos, and resumes.  *Id.* ¶ 15.  Plaintiffs conducted background research on Defendant to obtain information on Defendant's corporate structure and facilities.  *Id.* ¶ 16.

On July 3, 2013, Plaintiffs Monet Eliastam and Jesse Moore[2] filed a class and collective action against Defendant in the United States District Court for the Southern District of New York, alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by improperly classifying them as non-employee interns exempt from federal and state minimum wage requirements and failing to pay them and other interns minimum wages.  The complaint sought recovery of unpaid wages, attorneys' fees and costs, interest, and liquidated damages.

On September 24, 2013, Plaintiffs filed a First Amended Complaint.  *Id.* ¶ 19.  In or about late October, 2013, the Parties exchanged initial document requests and interrogatories. *Id.* ¶ 20.  On October 22, 2014, Plaintiffs filed a Second Amended Complaint adding Plaintiffs

---

[2]      On or about April 16, 2014, Jesse Moore voluntarily withdrew his claims from this action.  ECF No. 42.

Alexander Vainer, and Rheanna Behuniak, and asserting additional state law claims under California, and Connecticut minimum wage laws.  *Id.* ¶ 21.

### C.    Settlement Negotiations

In late October 2013, the parties agreed to arrange a meeting to explore a possible resolution of Plaintiffs' claims through settlement.  *Id.* ¶ 22.  Defendant produced data showing the number of Class Members who interned each year during the applicable statute of limitations and the state in which they interned.  Plaintiffs analyzed this data and constructed a damages model based on the data.  *Id.* ¶ 23.  In advance of the meeting, the Parties exchanged correspondence and had several telephone conferences during which they discussed the merits of the claims, the Parties' respective risks and vulnerabilities, and potential damages.  *Id.* ¶ 24.  On January 16, 2014, the Parties attended a full-day meeting at the New York offices of Defendant's counsel, Morgan, Lewis & Bockius LLP.  *Id.* ¶ 25.  At the meeting, the Parties reached an agreement on the settlement amount and several other key terms.  *Id.*  During the next several months, the Parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Settlement and Release ("Settlement Agreement") executed by the parties on or about October 22, 2014.[3]  *Id.* ¶ 26.  At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.  *Id.* ¶ 27.

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Settlement Amount

The Settlement Agreement creates a common fund of $6,400,000 (the "Settlement Amount").  Swartz Decl. ¶ 28; Ex. A (Settlement Agreement) § 1.41.  The Settlement Amount covers payments to Class Members, attorneys' fees, costs and expenses; payments for PAGA

---

[3]    The Parties are in the process of obtaining signatures for the Settlement Agreement, and Plaintiffs will file a fully-executed copy promptly after all signatures are obtained.

penalties; administrative costs; any Court-approved service payments; and the Reserve Fund.

Swartz Decl. ¶ 28; Ex. A (Settlement Agreement) § 1.41.

**B.    <u>Eligible Unpaid Interns</u>**

The Class Members who are entitled to receive awards from the Fund include individuals

who participated in Unpaid Internships with NBCUniversal Media, LLC, its predecessor, NBC

Universal, Inc., and/or its Affiliated Entities.  The "Rule 23 Class Members" consist of three sub-

classes of individuals ("Rule 23 Class Members"):

  a.  New York Sub-Class:  The "New York Sub-Class" consists of all individuals participated in Unpaid Internships with Defendant in New York at any time since July 3, 2007 through the Preliminary Approval Date; and

  b.  California Sub-Class:  The "California Sub-Class" consists of all individuals who participated in Unpaid Internships with Defendant in California at any time since February 4, 2010 through the Preliminary Approval Date; and

  c.  Connecticut Sub-Class:  The "Connecticut Sub-Class" consists of all individuals who participated in Unpaid Internships with Defendant in Connecticut at any time since February 4, 2011 through the Preliminary Approval Date.

Ex. A (Settlement Agreement) § 1.5, 1.40.  Class Members also include all other

individuals who participated in Unpaid Internships with Defendant in any state other than New

York, California, or Connecticut at any time since February 4, 2011 through the Preliminary

Approval Date.  Ex. A (Settlement Agreement) § 1.5.

**C.    <u>Releases</u>**

The Settlement Agreement provides that upon the Effective Date, each Rule 23 Class

Member who does not opt out will release and discharge any wage-and-hour claims related to

their Unpaid Internships through the Preliminary Approval Date.  In addition, all Class Members

who properly and timely submit Consent to Join Settlement forms will release any and all wage

and hour claims under the FLSA related to any Unpaid Internships.  Ex. A (Settlement

Agreement) §§ 1.37, 1.38, 2.8.1, 2.8.2.

4

### D.      **Allocation Formula**

Participating Class Members will be paid pursuant to an allocation formula based on the number of Unpaid Internships in which each Class Member participated, and the total number of unique Unpaid Internships by all Class Members during the relevant period.  Swartz Decl. ¶ 30; Ex. A (Settlement Agreement) § 2.2.1.  To determine each Class Member's individual settlement allocation, the Claims Administrator will divide the Net Settlement Amount by the total number of unique Unpaid Internships to determine the value for each unique Unpaid Internship, and then multiply the number of Unpaid Internships in which a Class Member participated during the relevant period.  Swartz Decl. ¶ 30; Ex. A (Settlement Agreement) § 2.2.1.

### E.      **Attorneys' Fees and Litigation Costs**

Class Counsel will apply for 18.5% ($1,184,000.00) of the Settlement Amount for attorneys' fees, plus costs and expenses.  Ex. A (Settlement Agreement) § 2.9.1.  The Court need not decide attorneys' fees and costs now.  Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' Counsel will file a Motion for Approval of Attorneys' Fees, Service Awards, and Reimbursement of Expenses along with their Motion for Final Approval of the Settlement.

### F.      **Service Awards**

In addition to their individualized awards under the allocation formula, Plaintiffs will apply for additional payments in recognition of the services they rendered on behalf of the class. *Id.* § 1.15.  Class Counsel will move for Court approval of the Service Payments of $10,000 to Plaintiff Monet Eliastam, $5,000 to Plaintiffs Alexander Vainer, and Rheanna Behuniak and $2,000 to Opt-In Plaintiffs Samantha Kurlander, Nicole Klepper, and Jamaal Brown.  *Id.* Plaintiffs will move for Court approval of the Service Payments simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

### G.   Settlement Claims Administrator

The Parties will mutually agree upon the Settlement Claims Administrator in good faith.

Swartz Decl. ¶ 34; Ex. A (Settlement Agreement) § 1.4.  The Claims Administrator's Fees and

Costs will be paid from the Fund.  *Id.* ¶ 35; Ex. A (Settlement Agreement) § 1.1.

## III.   CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.   Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.   Dissemination of notice of the settlement to affected class members; and

3.   A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*

("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  This process safeguards class members'

procedural due process rights and enables the Court to fulfill its role as the guardian of class

interests.  With this motion, Plaintiffs request that the Court take the first step – granting

preliminary approval of the Settlement Agreement, conditionally certifying the settlement class,

approving Plaintiffs' Proposed Notice, and authorizing the Claims Administrator to send the

notice.

The parties respectfully submit the following proposed schedule for final resolution of

this matter for the Court's consideration and approval:

1.   The Class Notice, along with a postage-paid, pre-addressed return envelope, will be mailed to Class Members with a Last Known Address within 20 days after the Court grants Plaintiffs' Motion for Preliminary Approval.  Ex. A (Settlement

Agreement) § 1.26.  Class Notice shall also be emailed to all Class Members for whom the Claims Administrator has a Last Known Email Address.  *Id.* § 2.5.6.

2. The Claims Administrator will also establish an Internet website that will contain electronic copies of the settlement documents that will allow individuals to download the Consent to Joint Settlement Form and other settlement forms.  *Id.* § 2.5.3.

3. The Claims Administrator shall send a text message to any Class Member for whom the Claims Administrator has no Last Known Address or Last Known Email Address for a Class Member, but has a Last Known Cell Phone Number, directing Class Members to the website established by the Claims Administrator. *Id.* § 2.5.7.

4. Class Members will have 60 days after the date the Class Notices are initially mailed or emailed to opt out of the settlement or object to it ("Notice Response Deadline").  *Id.* §§ 1.28, 2.6.1, 2.6.2.

5. Thirty (30) days prior to the Notice Response Deadline, if the Claims Administrator has not received a Consent to Join Form or Opt Out Statement from a Class Member who was sent Class Notice by email or First Class Mail, and the Class Notice was not returned as undeliverable, the Claims Administrator will mail or email a reminder notice to the Class Member.  *Id.* §§ 2.5.13, 2.5.14.

6. The Claims Administrator will also cause to be published an advertisement agreed to by the parties on the website LinkedIn that will direct individuals who have "NBC Intern" or "NBCUniversal Intern" on their LinkedIn profile to the Internet website established by the Claims Administrator.  *Id.* § 2.5.15.

7. A Final Approval and Fairness Hearing will be held as soon as is convenient for the Court, but at least 45 days after the Notice Response Deadline.  *Id.* § 1.44.

8. After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  The "Effective Date" of the Settlement will be the date on which the Judgment becomes a Final Judgment, i.e., the date of final affirmance on an appeal of the Judgment, the date of final dismissal with prejudice of the last pending appeal, or, if no appeal is filed, the expiration date of the time for filing or noticing any form of valid appeal from the Judgment.  *Id.* §§ 1.14, 1.17.

9. The Settlement Claims Administrator will disburse settlement checks to the Class Members within 30 days after the Effective Date.  *Id.* § 2.7.4.

**IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998).  "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).  "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Clem*, 2014 WL 1265909, at *1 (internal quotation marks and citation omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Id.* at *3 (citing (citing *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010); *Newberg* § 11.25).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the

preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness

. . . and appears to fall within the range of possible approval," the court should permit notice of

the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (3d ed.) §

30.41)).

"Fairness is determined upon review of both the terms of the settlement agreement and

the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D.

174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may

attach to a class settlement reached in arm's-length negotiations between experienced, capable

counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation

marks omitted); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th

Cir. 1982) (recognizing that courts rely on adversarial nature of litigated FLSA cases resulting in

settlement to indicate fairness). If the settlement was achieved through experienced counsels'

arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute

[their] judgment for that of the parties who negotiated the settlement." *Clem*, 2014 WL 2895918,

at *4 (internal quotations and citation omitted); *see also In re Top Tankers, Inc. Sec. Litig.*, No.

06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) (same).

Preliminary approval is the first step in the settlement process. It simply allows notice to

issue and for Class Members to object or opt out of the settlement. After the notice period, the

Court will be able to evaluate the settlement with the benefit of Class Members' input.

A.      **The Settlement Is Fair, Reasonable, and Adequate.**

In evaluating a class action settlement, courts in the Second Circuit generally consider the

nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),

*abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir.

2000).  Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id*. § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463 (internal citations omitted).  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

## 1.     Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 8,975 Class Members and claims under federal and state law.

Further litigation would cause additional expense and delay.  Extensive discovery would be required to establish liability and damages.  Moreover, the question of the proper test for

determining whether an intern is entitled to compensation under the FLSA and New York State law is unsettled in New York courts and in the U.S. Court of Appeals for the Second Circuit. The Second Circuit is considering appeals in *Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516 (S.D.N.Y. 2013), and *Wang v. Hearst Corp.*, 293 F.R.D. 489 (S.D.N.Y. 2013), which adopted different tests for determining whether an unpaid intern has been properly classified as unpaid.  In addition, the parties likely would have filed cross-motions for summary judgment on the question of whether interns were appropriately considered non-employees.  If the Court denied the motions, a fact-intensive trial would be necessary to determine Plaintiffs' and the Class Members' employee status.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

Notice of the settlement and its details has not yet issued to the class.  The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt out or object.  At this early stage in the process, this factor weighs in favor of preliminary approval.

### 3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

The parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin*, 391 F.3d at 537 (internal quotation marks and citations omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the

prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotation marks and citations omitted).

The parties' discovery here meets this standard.  As set forth above in Section I.B., Plaintiffs' Counsel conducted a thorough and extensive investigation into the merits of the potential claims and defenses.  Swartz Decl. ¶¶ 13-16.  The parties exchanged initial discovery requests.  *Id.* ¶ 20.  The parties also exchanged data relevant to both liability and damages.  *Id.* ¶ 23.  Therefore, this factor favors preliminary approval.  *See Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *6 (S.D.N.Y. Oct. 2, 2013) (granting final approval of class settlement reached early in case, where the parties conducted an "efficient, informal exchange of information"); *Frank*, 228 F.R.D. at 185 (approving settlement of case "in the relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").

### 4.   Plaintiffs Would Face Real Risks If the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks."  *Clem*, 2014 WL 2895918, at *6 (quoting *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997)).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *Clem*, 2014 WL 2895918, at *6.  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted).

A trial on the merits would involve significant risks for Plaintiffs on both liability and damages.  Plaintiffs would have to overcome Defendant's defense that Unpaid Interns were properly exempt from federal and state minimum wage and spread-of-hours requirements.  For example, in the *Wang* case, which involved unpaid interns similar to Defendant's Unpaid Interns, the court denied the plaintiffs' motion for summary judgment and class certification.  *Wang*, 293 F.R.D. at 498.  Plaintiffs would also have to prove willfulness in order to obtain a third year of liability of damages.  Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of preliminary approval.

### 5. Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet granted conditional certification under the FLSA or certified the Rule 23 Classes yet, and the Parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing.  In opposing class certification, Defendant would likely argue that the differences among different divisions and work locations and other individualized questions preclude class certification.  Although Plaintiffs disagree with these arguments, defendants have prevailed on arguments like these.  *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming decertification, citing "variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases") (internal quotation marks and citation omitted); *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in misclassification case based on evidence that class members' duties varied by location); *see*

*also Fraticelli v. MSG Holdings, L.P.*, No. 13 Civ. 6518, 2014 WL 1807105, at *2 (S.D.N.Y. May 7, 2014) (denying plaintiffs' motion for conditional certification in unpaid intern case where the interns "worked in approximately one hundred different departments, and their experiences appear[ed] to vary greatly from one department to the next"). Risk, expense, and delay permeate such processes. Settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

**6.**   **Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).**

It is not clear whether Defendant could withstand a greater judgment. However, even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Therefore, this factor is neutral and does not preclude the Court from granting final approval.

**7.**   **The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

Defendant has agreed to settle this case for up to $6,400,000.00. The settlement amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Clem*, 2014 WL 2895918, at *7 (quoting *Frank*, 228 F.R.D. at 186). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"

14

*Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455 n.2.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." Class Members will each receive an average settlement payment of approximately $505 (net of attorneys' fees and costs, service awards, the Reserve Fund, and payments for PAGA penalties but before required withholdings, deductions, and claims administration fees) for each unique Unpaid Internship in which they participated.  *Id.* ¶ 32.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

The *Grinnell* factors all weigh in favor of issuing preliminary approval of the settlement. If a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

**V.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASSES IS APPROPRIATE**

For settlement purposes, Plaintiffs seek to certify the New York Class, the California Class, and the Connecticut Class under Federal Rule of Civil Procedure 23(e) for purposes of effectuating the settlement.  As discussed below, Plaintiffs contend the settlement classes meet all of the certification requirements for class certification for settlement purposes, and Defendant does not oppose provisional certification for settlement purposes only.  Ex. A (Settlement Agreement) § 2.4.1; *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *1 (S.D.N.Y. Jan. 21, 2011) (conditionally certifying wage and hour settlement class and granting preliminary approval of settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the
claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of
the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

[Q]uestions of law or fact common to class members predominate over any
questions affecting only individual members, and that a class action is superior to
other available methods for fairly and efficiently adjudicating the controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction,
and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez
v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v.
Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

**A.     Numerosity**

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of
Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs easily satisfy this requirement because
there are approximately 7,730 Rule 23 Class Members.  Swartz Decl. ¶ 36.

**B.     Commonality**

The Plaintiffs maintain that the proposed settlement classes also satisfy the commonality
requirement, the purpose of which is to test "whether the named plaintiff's claim and the class
claims are so interrelated that the interests of the class members will be fairly and adequately
protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).
Although the claims need not be identical, they must share common questions of fact or law.
*Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d
Cir. 1983).  The proper question is whether there is a "unifying thread" among the claims to

17

warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement "liberally."  *Frank*, 228 F.R.D. at 181.

Plaintiffs contend this case involves numerous common issues.  Plaintiffs and Class Members all bring the identical claims that Defendant misclassified them as non-employees and failed to pay them minimum wage and spread-of-hours wages in violation of state wage and hour laws.  Other common issues include, but are not limited to, (a) whether Defendant derived an immediate advantage from interns' work; (b) whether interns displaced regular employees; and (c) whether Defendant's internship program was for the benefit of interns.  *See Glatt*, 293 F.R.D. at 536-37 (finding commonality satisfied in unpaid intern case).

### C. Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (citation omitted).  "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."  *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Plaintiffs contend that their claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims.  Defendant classified all Plaintiffs and Class Members as non-employees pursuant to the same company policy or practice.  Because Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs maintain that they satisfy the typicality requirement.  *See Glatt*, 293 F.R.D. at 537; *see also Clem*, 2014 WL 2895918, at *3 (typicality satisfied where "[p]laintiffs' wage and hour claims ar[o]se from the same factual and legal circumstances that form[ed] the basis of the [c]lass [m]embers' claims"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (substantively same).

### D.     Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (citation omitted).  Plaintiffs contend that they meet the adequacy requirement because there is no evidence that Plaintiffs have interests that are antagonistic to or at odds with those of Class Members.  *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (adequacy met where there was no evidence that named plaintiffs' and class members' interests were at odds).

Plaintiffs also contend that their counsel meet the adequacy requirement of Rule 23(a)(4). *See, e.g.*, *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (appointing O&G class counsel and noting that "O & G has the requisite experience in handling class actions . . . , are well versed in the applicable law, and have the resources necessary to represent the NYLL Class fairly and adequately"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. at 467, 473 (S.D.N.Y. 2013) (O&G attorneys have "substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law."); *Glatt*, 293 F.R.D. at 537, 539 (appointing O&G as class counsel).

### E.    Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). That Plaintiffs contend they easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### 1.    Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate "that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v.*

20

*A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007) (citation omitted).  The essential

inquiry is whether "liability can be determined on a class-wide basis, even when there are some

individualized damage issues."  *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159,

173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139

(2d Cir. 2001)).  Simply because "a defense 'may arise and [] affect different class members

differently does not compel a finding that individual issues predominate over common ones.'"

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa*

*Check/MasterMoney*, 280 F.3d at 138).  Where plaintiffs are "unified by a common legal theory .

. . and by common facts," the predominance requirement is satisfied.  *McBean v. City of New*

*York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  "The predominance requirement . . . is more

demanding than the Rule 23(a) commonality inquiry and is designed to determine whether

'proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Frank*,

228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

     Here, Plaintiffs contend that Class Members' common factual allegations and common

legal theory – that Defendant violated federal and state wage and hour laws by misclassifying

them as non-employees and failing to pay them any wage – predominates over any factual or

legal variations among Class Members.  *See Glatt*, 293 F.R.D. at 537-38; *Clem*, 2014 WL

1265909, at *4 (finding plaintiffs' "common factual allegations and common legal theory . . .

predominate[] over any factual or legal variations among Class Members" in wage and hour

misclassification case); *Yuzary*, 2013 WL 1832181, at *4 (same).

### 2.     <u>A Class Action Is a Superior Mechanism</u>

     The second part of the Rule 23(b)(3) analysis examines whether "the class action device

[is] superior to other methods available for a fair and efficient adjudication of the controversy."

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (internal quotation marks and citation omitted)).  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, Plaintiffs contend that they and Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any pending individual lawsuits filed by Class Members arising from the same allegations.  Employing the class device here will not only achieve economies of scale for putative Class Members, "but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims."  *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *3 (E.D.N.Y. Jan. 20, 2010); *see Damassia*, 250 F.R.D. at 161, 164.  A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Plaintiffs' and Class Members' claims.

## VI.   CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE IS APPROPRIATE

Plaintiffs seek to conditionally certify the following collective pursuant to 29 U.S.C. 216(b) for purposes of effectuating the settlement: all individuals who participated in Unpaid Internships with NBCUniversal Media, LLC, its predecessor, NBC Universal, Inc., and/or its

Affiliated Entities, as defined in the Stipulation of Settlement, at any time since February 4, 2011 through the date of this Court's Order granting preliminary approval of the settlement. Defendant does not oppose this application.

The members of the proposed collective are all "similarly situated," 29 U.S.C. § 216(b), because Plaintiffs contend that they and members of the proposed collective were all "victims of a common policy or plan that violated the law" – namely, their classification as non-employee interns. *Myers*, 624 F.3d at 555; *see also Wang v. Hearst Corp.*, No. 12 Civ. 793, 2012 WL 2864524, at *2 (S.D.N.Y. July 12, 2012), *reconsideration denied,* No. 12 Civ. 793, 2012 WL 3642410 (S.D.N.Y. Aug. 24, 2012) (conditionally certifying collective of unpaid interns).

## VII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs request that O&G be appointed as Class Counsel. Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note.

Plaintiffs contend that Plaintiffs' Counsel meet all of these criteria. Plaintiffs' Counsel have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and

Class Members' claims.  Swartz Decl. ¶¶ 13-21.  Additionally, Plaintiffs' Counsel has substantial

experience prosecuting and settling employment class actions, including wage-and-hour class

actions, and the lawyers assigned to this matter are well-versed in wage-and-hour law and in

class action law and are well-qualified to represent the interests of the class.  *Id.* ¶¶ 4-11.

Accordingly, courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel in

wage and hour class actions.  *See supra* Section IV.D; Swartz Decl. ¶ 12.

## VIII.  THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The content of the Proposed Notice, which is attached to the Swartz Declaration as

Exhibit B, fully complies with due process and Federal Rule of Civil Procedure 23.  Pursuant to

Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to
> all members who can be identified through reasonable effort. The notice must
> clearly and concisely state in plain, easily understood language:

> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (ii)    the class claims, issues, or defenses;
> (iii)   that a class member may enter an appearance through an attorney if the
> member so desires;
> (iv)    that the court will exclude from the class any member who requests
> exclusion;
> (v)     the time and manner for requesting exclusion; and
> (vi)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notice here satisfies each of these requirements.  Additionally, it describes

the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides

specific information regarding the date, time, and place of the final approval hearing.  Courts

have approved class notices even when they provided only general information about a

settlement.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2010 WL 5509089, at *3-4 (E.D.N.Y. Nov. 29, 2010).  The detailed information in the Proposed Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Class Notices will be mailed by the Claims Administrator to the last known address of each Class Member for whom the Claims Administrator has a last known address, within 20 days of preliminary approval.  Ex. A (Settlement Agreement) §1.27.  The Claims Administrator will also email the Class Notices to all Class Members for whom the Claims Administrator has a last known email address, and send a text message to Class Members for whom the Claims Administrator has no last known address or email address but has a last known cell phone number.  *Id.* §§ 2.5.6, 2.5.7.  The Claims Administrator will take reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as undeliverable and will attempt re-mailing.  *Id.* § 2.5.11.  The Class Notices contain information about how to exclude oneself or object to the settlement.  Rule 23 Class Members will have 60 days from the Notice Mailing Deadline to submit opt-out requests or to comment on or object to the settlement.  *Id.* §§ 2.6.1, 2.6.2.  The Claims Administrator will mail Class Members their payments 30 days after the Effective Date.  *Id.* § 2.7.4.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated:  October 22, 2014
        New York, New York

                                    Respectfully submitted,
                                    **OUTTEN & GOLDEN LLP**

                                    /s/ Justin M. Swartz
                                    Justin M. Swartz
                                    Juno Turner
                                    Deirdre Aaron
                                    3 Park Avenue, 29th Floor
                                    New York, New York 10016
                                    Telephone:  (212) 245-1000
                                    Facsimile:  (212) 977-4005